ROBERT R. ROGINSON, CA Bar No. 185286
robert.roginson@ogletree.com
RYAN H. CROSNER, CA Bar No. 278418
ryan.crosner@ogletree.com
CHLOE S. CHANG, CA Bar No. 321007
chloe.chang@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:     213-239-9800
Facsimile:     213-239-9045

Attorneys for Defendant
JOHNSON SERVICE GROUP

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS GOMEZ, on behalf of himself and others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OMNICELL, INC., a Delaware corporation; JOHNSON SERVICE GROUP, a Delaware corporation; and DOES 1 through 50, inclusive,<br>　　　　　Defendants. | Case No. _____<br><br>**DEFENDANT JOHNSON SERVICE GROUP'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>*[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Related Cases; Declarations of James E. Filarski and Ryan H. Crosner in Support of Removal]*<br><br>Complaint Filed:  March 12, 2024<br>Trial Date:           None<br>District Judge:    Hon. _____<br>　　　　　　　　Courtroom \_\_\_ |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF LUIS GOMEZ AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Johnson Service Group ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441(a), 1446, and 1453.  In support of such removal, Defendant states as follows:

I.     **THE STATE COURT ACTION**

1. On March 12, 2024, plaintiff Luis Gomez ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Santa Clara County Superior Court, entitled, *Luis Gomez, on behalf of himself and others similarly situated, Plaintiff v. Omnicell, Inc., a Delaware corporation; Johnson Service Group, a Delaware corporation; and DOES 1 through 50, inclusive, Defendants*, which was assigned case number 24CV432995 (the "State Court Action").  (Declaration of Ryan H. Crosner ("Crosner Decl.") ¶ 3, Ex. A.)

2. The Complaint brings putative class claims for alleged: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Wages and Overtime Under Labor Code § 510; (3) Meal-Period Liability Under Labor Code § 226.7; (4) Rest-Break Liability Under Labor Code § 226.7; (5) Violation of Labor Code § 226(a); (6) Failure to Keep Required Payroll Records Under Labor Code §§ 1174 and 1174.5; (7) Penalties Pursuant to Labor Code § 203; and (8) Violation of Bus. & Prof. Code § 17200 *et seq*.

3. On March 15, 2024, through its agent for service of process, Defendant was served with the Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit Notice.  (Crosner Decl., ¶ 3.)

4. As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action.  True and correct copies of the rest of the documents are attached as **Exhibit B** to this Notice of Removal.  (Crosner Decl., ¶ 4, Ex. B.)  Defendant has not been served with any pleadings, process, or orders besides those attached.  *Id*.

5. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

6. Pursuant to 28 U.S.C. § 1453, Defendant does not need to obtain the consent of any other defendant to remove this action. *United Steel, et al. v. Shell Oil Co.*, 549 F.3d 1204, 1208-1209 (under CAFA, one defendant may remove entire case without joinder of other defendants); *Abrego v. The Dow Chemical CO.*, 443 F.3d 676, 681 (9th Cir. 2006) (any defendant may remove a class action without the consent or joinder of any other defendants). Nonetheless, defendant Omnicell, Inc. joins in the removal.

7. <u>This Notice is Timely</u>. This Notice of Removal is timely as it is filed less than one year from the date this action was commenced and within 30 days of service upon Defendant. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

## II. THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

8. This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. sections 1441 and 1453 because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A. The Size of the Putative Class Exceeds 100

9. In his Complaint, Plaintiff defines the proposed class as: "All individuals employed by Defendants, at any time within four (4) years of the filing of this lawsuit, as non-exempt, hourly employees within the State of California." (Compl., ¶ 25.)

10. Defendant's employment records show that there are hundreds of current and former employees who fall within Plaintiff's proposed class. From April 3, 2020 to March 25, 2024, (the "Applicable Period"), Defendant has employed at least 1507 California non-exempt employees. (*See* Declaration of James E. Filarski ("Filarski Decl."), ¶ 9.)

**B.    The Parties Are Diverse**

11.    <u>Citizenship of Plaintiff and putative class members</u>.  For diversity purposes, an individual is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  An individual's domicile is the place he resides with the intention to remain or to which he intends to return.  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

12.    The Complaint alleges that "Plaintiff LUIS GOMEZ has resided in California and during the time period relevant to this Complaint was employed by Defendants as non-exempt hourly employee within the State of California at Defendants' facilities and offices in California." (Compl., ¶ 4.)  Likewise, Defendant's employment records confirm that throughout his employment with Defendant, Plaintiff lived in the State of California, including the home address that Plaintiff provided for payroll purposes.  (Filarski Decl., ¶ 8.)  Plaintiff is a citizen of the State of California.

13.    Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California.  (Compl., ¶ 25); *see, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship).  Thus, even if Plaintiff was somehow a citizen of Illinois or Delaware as Defendant is (and there is no evidence that he is), there is no possible way that the citizenship of hundreds of putative class members, all of whom worked in California (Compl., ¶ 25), were also citizens of Illinois.

14.    <u>Citizenship of Defendant</u>.  Defendant is a corporation.  (Filarski Decl., ¶ 3).  "A corporation shall be deemed to be a citizen of any State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . ." 28 U.S.C. § 1332(c).  The Supreme Court has established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction.  *Hertz Corp. v. Friend,* 559 U.S. 77 (2010).  The Court held that the "'principal place of business' [as set forth in Section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 92-93.  The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of

direction, control and coordination." *Id*. at 93*; see also Montrose Chem. v. Am. Motorists Ins. Co*., 117 F.3d 1128, 1134 (9th Cir. 1997) (holding that a corporation's principal place of business is the state in which it performs a substantial predominance of its corporate operations and, when no state contains a substantial predominance of the corporation's business activities, then the corporation's principal place of business is the state in which the corporation performs its executive and administrative functions).

15. Defendant is, and was at all times relevant to this action, a corporation formed under the laws of the State of Delaware. (Filarski Decl., ¶ 3.)

16. Defendant's corporate headquarters are, and were at all times relevant to this action, located in Illinois. (Filarski Decl., ¶ 4).

17. Defendant's principal place of business, and location from which its executive and senior management personnel and primary management operations direct, control, and coordinate the corporation's activities, is, and was at all times relevant to this action, located in Westmont, Illinois. (Filarski Decl., ¶ 4.) The majority of Defendant's Executive Officers primarily work out of offices located in the State of Illinois. *Id*.

18. Defendant, by and through its high-ranking officers, whose offices are located in the State of Illinois, direct, control and coordinate activities, which include the following: (1) matters relating to the financing of Defendant's operations; (2) advertising and marketing; (3) final decisions with respect to directing general business and operations; (4) the size and composition of Defendant's workforce; and (5) Defendant's IT functions. (Filarski Decl., ¶ 7.) The books and records relating to these and other matters, which are directed, controlled, and coordinated from the headquarters office in Illinois, are maintained at that office. *Id*.

19. Accordingly, Defendant is, and was at all times relevant to the Complaint and this Removal, a citizen of the State of Illinois and State of Delaware, not California.

20. The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998).

/ / /

21. Thus, the parties are completely diverse in this matter because Plaintiff is a citizen of California, and Defendant is a citizen of Illinois and Delaware.

C. **The Amount in Controversy Exceeds an Aggregate of $5,000,000**

22. Plaintiff has not alleged a specified amount in controversy in the Complaint. (*See generally* Compl.)

23. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

24. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Further, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, No. C–13–0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

25. While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

26. As described further below, as well as in the concurrently-filed declaration from James E. Filarski, the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

### 1. **Defendant's Estimate of the Amount in Controversy**

#### (a) **The amount placed in controversy by the minimum wage claim.**

27. In his First Cause of Action, Plaintiff alleges that Defendant failed to pay putative class members at least the minimum wage for all hours worked. (Compl., ¶¶ 12, 13, 37.) Plaintiff's Complaint alleges widespread and regularly-occurring instances of unpaid wages. For instance, the Complaint contends that "Defendants failed to pay Employees minimum wages for all hours worked. Defendants had a consistent policy of misstating Employees time records and failing to pay Employees for all hours worked during their meal breaks. Moreover, Defendants did not pay Plaintiff and Employees at the applicable minimum wage for all hours worked. Defendants' uniform pattern of unlawful wage and hour practices manifested…" *Id* at *37*.

28. Labor Code Section 1194(a) provides:
> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

29. Based on Defendant's records, the approximate number of current and former non-exempt employees who worked for Defendant in California from April 3, 2020 to March 25, 2024, 2024 ("putative class members") is 1507. (*See* Filarski Decl., ¶ 9.) These putative class members worked an aggregate of 164,605 total shifts during the Applicable Period. (Filarski Decl., ¶ 10.) The hourly rate of the putative class members was at least $33.53 per hour during this period. (Filarski Decl., ¶ 10.)

30. Based on the above facts and allegations contained in Plaintiff's Complaint, Defendant's calculation of Plaintiff's claims for unpaid minimum wages is **$479,412.06** ($14.5625[1]

---

[1] The applicable minimum hourly wage was $11 for 2018, $12 for 2019, $13 for 2020, $14 for 2021, $15 for 2022, and $15.50 for 2023. Based on the number of months during the Applicable Period that each minimum wage was in effect, the average minimum wage during the Applicable period is $13.54.

x 1 hour x 32,921 workweeks).

31. An estimate of one hour of unpaid wages for every workweek has been accepted by the federal courts as a reasonable and conservative figure. *See Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of one hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of one hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Soto v. Tech Packaging, Inc.,* No. ED CV 19-1766-MWF (SHKx)*,* 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC,* No. SACV 17–2104 JVS(JDEx), 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"). This is especially the case where, as here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked unpaid wages without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

32. Plaintiff also seeks liquidated damages. (Compl., ¶ 43.) Labor Code Section 1194.2(a) allows an employee to recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon" for failure to pay minimum wage. The amount in controversy for the *liquidated damages* would therefore also be **$479,412.06.**

33. Consequently, the amount placed in controversy by the Minimum Wage Claim is at least **$958,824.12.**

/ / /

/ / /

**(b)   The amount placed in controversy by the overtime wage claim.**

34.   In his Second Cause of Action, Plaintiff alleges that Defendant failed to pay putative class members for all overtime worked. (Compl., ¶¶ 13, 45.) Plaintiff further alleges the following with respect to his overtime wage claims:

- "During the course of Plaintiff and the Class Members' employment with Defendants, they were not paid all wages they were owed, including for all work performed and for all overtime hours worked, and they were forced to work during their meal and rest breaks to keep labor budgets low." *Id*. ¶ 13.
- "As a matter of uniform Company policy…Plaintiff and the Class members were also not paid regular wages and overtime for the time they were required to comply with other requirements imposed upon them…" *Id*. ¶ 14.
- "Employees regularly worked over 8 hours on a given day without receiving overtime compensation." *Id*. ¶ 45.

35.   Based on a review of Defendant's business records, putative class members conservatively worked approximately **32,921** workweeks during the Applicable Period. (Filarski Decl., ¶ 12.) Putative class members' average hourly rate of pay[2] during the Applicable Period was **$33.53**. (Filarski Decl., ¶ 10.)

36.   Where the Complaint does not specify the amount of alleged unpaid overtime worked, courts have found it reasonable to assume one hour of unpaid overtime per week. *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at **6–7 (C.D. Cal. May 9, 2011) (The defendant's estimates based on one hour of unpaid overtime per class member were conservative and reasonable given allegation of consistent failure to pay overtime); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S–11–1433 KJM DAD, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (Where it was

---

[2]   When calculating the amount in controversy for an overtime wages claim, courts routinely accept the use of average rates of pay. *See, e.g., Hernandez v. Nuco2 Mgmt., LLC*, No. 1:17–cv–01645–LJO–JLT, 2018 WL 933506, at **6-7 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation"); *Taylor v. United Rd. Servs., Inc.*, 313 F. Supp. 3d 1161, 1179 (E.D. Cal. 2018) (same).

plaintiff's standard practice not to pay "requisite compensation for all hours worked," without more specific allegations to narrow the potential scope of damages, the complaint was not susceptible to precise calculations and defendant's assumptions were thus reasonable); *Jimenez v. Allstate Ins. Co.*, No. CV 10–8486 AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (Based on this allegation of "consistent" overtime work, the defendant reasonably "estimated one hour of unpaid overtime compensation per week for each putative class member.").

37. Given Plaintiff's allegations that the putative class members were regularly denied overtime, it is reasonable—and, in fact, conservative—to apply a violation rate of one hour of overtime per person, per workweek. Defendant's calculation of the amount in controversy Plaintiff's claims for unpaid overtime is **$1,655,761.70** (**32,921** workweeks x (1.5 x $33.53) x 1 hour). This calculation is based on the estimate that putative class members worked 1 hour of unpaid overtime per week.

### (c) The amount placed in controversy by the waiting time penalty claim.

38. In his Seventh Cause of Action, Plaintiff alleges that "From at least four (4) years prior to filing this lawsuit and continuing to the present, Defendants have had a consistent policy of failing to pay all wages fur [sic] and owed to Employees at the time of their termination of within seventy-two (72) hours of their resignation, as required by California wage-and-hour laws." (Compl., ¶ 22.) Plaintiff's untimely pay claim is also derivative of Defendant's purported failure to pay putative class members all regular wages, overtime wages, meal period premiums, and rest period premiums allegedly due. *Id.*

39. Plaintiff's Complaint expressly seeks 30 days of wages as a penalty. (Compl., ¶ 77.) ("The Class is entitled to recover from Defendants their additionally accruing wages for each day they were not paid, … up to thirty (30) days …"). Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not

made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

40. Given the allegations of Plaintiff's Complaint, it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at putative class members' daily wage rate. *See, e.g., Mackall v. Healthsource Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at **5-6 (N.D. Cal. Sept. 2, 2016) (approving 100% violation rate in calculating waiting time penalties on removal which are based on allegation that Defendant had a "pattern and practice" to not pay overtime wages due); *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1218 (N.D. Cal. 2019) (holding that assumed maximum waiting time penalties "was completely reasonable"; "If the gravamen of the allegation were that Baxter was sometimes tardy in providing final paychecks, then indeed it would not be reasonable to assume that nearly all employees did not get their final paychecks for 30 or more days. De Vega's theory, however, plainly is that putative class members were owed (and are still owed) pay for overtime and missed meal and rest breaks, even if their final paychecks were otherwise timely delivered. Thus, it is completely reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums"); *Ford v. CEC Entm't, Inc.*, No. CV 14–01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) (same; CAFA amount in controversy satisfied in part by waiting time penalties; "Assuming a 100% violation rate is thus reasonably grounded in the complaint....Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum."); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 906, 912 (N.D. Cal. 2016) (approving assumption on removal that each employee would be entitled to maximum statutory penalty for 30 days).

41. Based on a review of Defendant's business records, at least 281 non-exempt California employees have separated employment with Defendant during the relevant statutory period of March 12, 2020 to March 12, 2024. (*See* Filarski Decl., ¶ 11.) These employees earned an average base hourly rate of $33.53. (*See* Filarski Decl., ¶ 10.)

42. Defendant's calculation of the amount in controversy for Plaintiff's claim for waiting time penalties is **$2,261,125** by (1) conservatively taking the number of putative class members who

separated from employment during the period of March 12, 2021 to April 12, 2024, (2) assuming each of these putative class members is owed overtime wages, rest period premiums, meal period premiums, and/or minimum wages, and thus allegedly entitled to receive waiting time penalties for their separation, (3) assuming the full 30 days applies to the waiting time penalty, (4) assuming a "day" for the purposes of the waiting time penalty constitutes eight hours worked; and (5) using putative class members' average rate of pay ($33.53) to calculate the waiting time penalties.

### (d) Attorneys' fees further increase the amount in controversy.

43. When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy."); *Muniz*, 2007 WL 1302504, at *3 ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint."). The Court may consider all attorneys' fees that at the time of removal can reasonably be anticipated will be incurred over the life of the case. *See Fritsch*, 889 F.3d at 794 ("Because the law entitles [Plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Goldberg v. CPC Int'l*, 678 F.2d 1365, 1367 (9th Cir. 1982); *Haase v. Aerodynamics Inc.*, 2009 WL 3368519, at *5; *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002).

44. Under the Ninth Circuit's well-established precedent, twenty-five (25) percent of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.,* No. 07cv938 IEG JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (*quoting Hopson v. Hanesbrands Inc.,* 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors Inc.*, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in

CAFA wage and hour cases). Additionally, courts have accepted estimates of 25%, especially where the "[p]laintiff does not raise any factors counseling against the application of the 25% benchmark …" *Cortez v. United Nat. Foods, Inc.*, No. 18-cv-04603-BLF, 2019 WL 955001, at *7 (N.D. Cal. Feb. 27, 2019); *see also Ramirez v. Benihana Nat'l Corp.*, No. 18-cv-05575-MMC, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019) (same).

45. Here, Plaintiff claims that he is entitled to attorneys' fees under the California Labor Code. (*See* Compl., ¶¶ 43, 51, 67, Prayer for Relief ¶ 15.)

46. Defendants have established the total amount in controversy, exclusive of attorneys' fees is **$4,875,710.82**. Plaintiff has not indicated he will seek less than twenty-five (25) percent of a common fund in attorneys' fees. Moreover, Plaintiff has not alleged any factors meriting departure from the 25% benchmark in wage and hour cases. Defendant denies any such attorneys' fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the attorneys' fees are owed. Given the valuation of this matter, the attorneys' fees portion is valued at $1,218,927.71 and also supports this removal.

47. Consequently, the amount placed in controversy by Plaintiff's request for attorneys' fees is at least **$1,218,927.71** ($4,875,710.83 x 25%).

### (e) Summary of Defendant's calculations.

48. As described above, a conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, overtime wage, and waiting time penalties alone claims exceed the jurisdictional minimum of $5,000,000. These claims (along with attorneys' fees) have placed at least $6,094,638.53 in controversy, summarized as follows:

| Claim | Estimated Exposure |
|---|---|
| Minimum Wages | $958,824.12 |
| Overtime Wages | $1,655,761.70 |
| Waiting Time Penalties | $2,261,125 |
| **Sub-Total** | **$4,875,710.82** |

| Claim | Estimated Exposure |
|---|---|
| Attorneys' Fees | $1,218,927.71 |
| **Total** | **$6,094,638.53** |

49. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

**III.    DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS**

50. <u>Venue is Proper</u>. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Santa Rosa is located within the Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

51. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

52. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Santa Rosa. Notice of compliance shall be filed promptly afterward with this Court.

53. As required by Federal Rule of Civil Procedure Rule 7.1 and Local Rule 3-15, Defendant has concurrently filed its Certificate of Interested Parties and Disclosure Statement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

54. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes this action to this Court.

DATED: April 12, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Ryan H. Crosner
Robert R. Roginson
Ryan H. Crosner
Chloe S. Chang

Attorneys for Defendant
JOHNSON SERVICE GROUP